NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 210334-U

NO. 4-21-0334

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 12, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* N.G. and N.L., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 20JA155 |
| v. | ) | |
| Kaelyn L., | ) | Honorable |
| Respondent-Appellant). | ) | Brian J. Goldrick, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed the trial court's judgment, concluding the court's
unfitness finding was not against the manifest weight of the evidence.

¶ 2        In November 2020, the State filed a petition for adjudication of wardship as to

N.G. and N.L., the minor children of respondent, Kaelyn L., asserting the minor children were

neglected. In May 2021, the trial court (1) found respondent unfit to care for the minor children;

(2) made the minor children wards of the court; and (3) placed the minor children's guardianship

with the Illinois Department of Children and Family Services (DCFS).

¶ 3        Respondent appeals, contending the trial court's determination she was unfit was

against the manifest weight of the evidence. We affirm.

¶ 4                            I. BACKGROUND

¶ 5        In November 2020, the State filed a petition for adjudication of wardship with respect to N.G. (born in May 2020) and N.L. (born in March 2016), the minor children of respondent. The petition alleged the minors were neglected pursuant to the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-3(1)(b) (West 2020)) because their environment was injurious to their welfare while they resided with respondent, in that respondent engaged in a high-speed chase with Bloomington police officers with the two children in the vehicle. The trial court subsequently placed temporary custody with DCFS.

¶ 6        At a hearing on February 2, 2021, respondent admitted the allegation in the State's petition for adjudication of wardship. The trial court admonished respondent and found she knowingly and voluntarily made the admission. The State's factual basis indicated the evidence would show respondent "was driving in a high-speed chase with the minors in the car so that father, Byron [G.], could avoid being arrested on a warrant." Accordingly, the court found the factual basis sufficient to support the allegation in the petition, accepted respondent's admission, and entered an adjudicatory order finding N.G. and N.L. to be neglected minors.

¶ 7        On February 25, 2021, a dispositional report was filed. The report indicated respondent, born in 1998, was incarcerated in the McLean County jail "after a warrant was issued for her arrest due to missing a court hearing." Respondent indicated she and Byron G. were "working on their relationship" and disclosed being pregnant with their second child. The report further indicated N.G. lived with his paternal grandmother along with his older sister, N.L., and their medical needs were being met. During visitation, respondent "engaged with the children and provided adequate care."

¶ 8        In March 2021, an integrated assessment concluded respondent's recent criminal behavior and mental health "significantly impacted her parenting, resulting in a grave lack of

protection for her children." In support of this conclusion, the assessment cited concerns "that [respondent] was not providing full time primary caregiving, leaving the children with others for extended care." The assessment noted respondent was "facing charges of aggravated fleeing and alluding [*sic*], preventing the apprehension of a fugitive, leaving the scene of an accident, child endangerment, reckless driving, [and] operating an uninsured vehicle." Despite reporting to police that Byron G. told her she "better not" stop during the high-speed chase and that she was afraid of what he would do to her if she did, respondent indicated Byron G. was "safe to parent *** and be around the children." Respondent also denied any history of physical abuse during their relationship. The assessment stated respondent's "issues with minimizing, denial, and avoidance appear to impact her daily functioning and behavior ***, which continues to create a risk of harm to the children."

¶ 9        The integrated assessment recommended respondent (1) be referred to a psychiatrist to determine the most appropriate course of treatment, (2) attend "intensive parenting services and coaching," (3) engage in individual psychotherapy, (4) be monitored for substance abuse, and (5) receive domestic violence support services.

¶ 10        In April 2021, an addendum to the dispositional report identified the following "service plan goals." Respondent was to obtain stable housing and employment; refrain from any future criminal activity; maintain a relationship with her children; and complete mental health counseling, parenting education classes, and domestic violence treatment. DCFS also "decided to start having [respondent] do drug screens to ensure [she] was not using any substances" and required respondent "to call into the office Monday through Friday to see if she needs to screen." Respondent "called in 10 days out of 32 days" and failed to appear for drug screenings scheduled on March 19, March 24, April 7, and April 21, 2021. The addendum noted respondent "was

released from [the] McLean County Jail on 2/26/21 and sentenced with 30 months['] probation and 100 hours of community service." Respondent lived with her mother and "was working at Steak and Shake *** but quit mid-April due to conflicts with her manager." The addendum also noted respondent was "a loving mom who wants to be reunified with [N.L.] and [N.G.]" The addendum indicated respondent had engaged in both mental health counseling and domestic violence treatment. Respondent had not begun parenting classes.

¶ 11	In May 2021, the trial court conducted a dispositional hearing. The State recommended respondent be found unfit, with custody and guardianship of N.G. placed with DCFS. The State noted respondent still needed "to complete her mental health treatment, parenting class, domestic violence treatment, screen clean[,] and continue to work her probation and community service." The State also recommended custody of N.L. should be placed with Jaelin W., N.L.'s father.

¶ 12	Respondent's attorney acknowledged "why the Court would have to find [respondent] unfit today because she does need to engage in her services, complete them, and then adequately apply them to her life so that the Court will believe that she has eliminated all safety risks and *** will continue to keep her children safe." Counsel recommended the permanency goal for the minor children be to return home in 12 months.

¶ 13	Although the trial court recognized respondent was "off to a good start," it determined making N.G. and N.L. wards of the court served the minor children's best interests. The court found respondent unfit to care for N.G. and N.L. "given the circumstances that brought us here and the issues that need to be addressed." Accordingly, the court found respondent unfit, for reasons other than financial circumstances alone, to care for N.G. and N.L., and placement with her was contrary to the health, safety, and best interests of the children. The court made the

minor children wards of the court and placed custody and guardianship of N.G. with DCFS. With respect to N.L., the court placed custody with Jaelin W. and guardianship with DCFS.

¶ 14    This appeal followed.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, respondent argues the trial court's determination she was unfit was against the manifest weight of the evidence. We disagree.

¶ 17    The Juvenile Act (705 ILCS 405/1-1 *et seq.* (West 2020)) provides a two-step process for determining whether a minor should be removed from his or her parents' custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step requires the trial court to conduct an adjudicatory hearing to determine whether the minor is abused, neglected, or dependent. *A.P.*, 2012 IL 113875, ¶ 19. If such a finding is made, the matter proceeds to the second step, which requires the court to conduct a dispositional hearing. *A.P.*, 2012 IL 113875, ¶ 21. At that hearing, the court determines "whether it is consistent with the health, safety and best interests of the minor and the public that the minor be made a ward of the court." *A.P.*, 2012 IL 113875, ¶ 21. If such a finding is made, the court may place guardianship and custody with DCFS if the court determines the parents are unfit, "for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27(1) (West 2020).

¶ 18    On review, a trial court's factual finding a parent is unfit, unable, or unwilling to care for a minor will not be reversed unless it is against the manifest weight of the evidence. *In re K.E.S.*, 2018 IL App (2d) 170907, ¶ 51, 103 N.E.3d 934. "A finding is against the manifest

weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d 441, 464, 819 N.E.2d 734, 747 (2004).

¶ 19　　　　To the extent respondent challenges the trial court's dispositional findings, we find the record supports the court's determination respondent was unfit to care for or protect N.G. and N.L., and placement with her was contrary to the health, safety, and best interests of the children. The integrated assessment, the dispositional report, and its addendum provided a comprehensive and detailed description of this family's circumstances. Here, N.G. and N.L. were taken into protective custody based on their mother's attempt to elude police by engaging in a high-speed chase with the minor children in her vehicle "so that father, Byron [G.], could avoid being arrested on a warrant." During the high-speed chase, respondent struck a patrol car, left the roadway, and drove into the yard of a private residence. Respondent was given citations for improper lane usage, leaving the scene of an accident, operating an uninsured motor vehicle, reckless driving, and aggravated fleeing and eluding a peace officer with property damage over $300. She was also charged with aiding a fugitive and endangering the life and health of a child.

¶ 20　　　　The integrated assessment explained respondent's recent criminal behavior and mental health "significantly impacted her parenting, resulting in a grave lack of protection for her children." The assessment specifically expressed concern regarding respondent's indication Byron G. was "safe to parent *** and be around the children," despite respondent reporting Byron G. threatened her during the incident which led to the minor children being taken into protective custody. According to respondent, Byron G. told her she "better not" stop when police attempted a traffic stop of the van she was driving. Although respondent maintained there were no instances of domestic violence and that she and Byron G. did not engage in arguments, her extreme behavior, placing her children and herself in serious risk of harm, indicates otherwise.

The assessment concluded respondent's "issues with minimizing, denial, and avoidance appear to impact her daily functioning and behavior *** , which continues to create a risk of harm to the children."

¶ 21          Although we recognize respondent engaged in both mental health counseling and domestic violence treatment, respondent had not completed significant components of her service plan. She had not begun parenting education classes, missed 22 call-in appointments, and failed to appear for four of seven scheduled drug screenings. Moreover, at the dispositional hearing, respondent's own counsel acknowledged respondent was "unfit *** because she does need to engage in her services, complete them, and then adequately apply them to her life so that the Court will believe that she has eliminated all safety risks and *** will continue to keep her children safe."

¶ 22          Respondent demonstrated she was unfit to care for or protect N.G. and N.L. Although she may very well successfully complete her service plan, the minor children's health, safety, and best interests were jeopardized and more time was needed to ensure respondent would no longer expose them to potentially dangerous and emotionally traumatic situations. See 705 ILCS 405/2-27(1) (West 2020). The trial court's dispositional findings were based upon the recommendations and facts contained in the integrated assessment, the dispositional report, and its addendum; these documents clearly detailed deficiencies in respondent's parenting ability and explained why, because of these deficiencies, it was recommended respondent complete services, attend parenting classes, and receive therapy. Based on this record, we conclude the trial court's finding respondent was unfit to care for N.G. and N.L. was not against the manifest weight of the evidence because the opposite conclusion was not clearly evident. See *Arthur H.*, 212 Ill. 2d at 464.

¶ 23                                III. CONCLUSION

¶ 24        For the reasons stated, we affirm the trial court's judgment.

¶ 25        Affirmed.